UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARICELLA CERVANTES,

           Plaintiff,                   CIVIL ACTION NO. 14-cv-11370

           v.                        DISTRICT JUDGE NANCY G. EDMUNDS

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

           Defendant.
_____/

REPORT AND RECOMMENDATION

Plaintiff Maricella Cervantes seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 18) and Defendant's Motion for Summary Judgment (docket no. 20).  Plaintiff also filed a response to Defendant's Motion.  (Docket no. 23.)  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 3.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

For the reasons stated herein, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 18) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 20) be GRANTED.

## II.      PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of July 19, 2011, alleging that she has been disabled since February 24, 2011, due to depression, anxiety, anger, post-traumatic stress disorder (PTSD), and back pain.  (TR 81-82, 136-48, 159.)  The Social Security Administration denied Plaintiff's claims on December 16, 2011, and Plaintiff requested a *de novo* hearing.  (TR 57-82, 91-92.)  On September 5, 2012, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Theodore W. Grippo.  (TR 27-56.)  In an October 25, 2012 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 12-22.) The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.     HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.      Plaintiff's Testimony

Plaintiff was 24 years old at the time of the administrative hearing and 22 years old on the alleged onset date.  (TR 21, 30.)  Plaintiff told the ALJ that she had previously worked at Target, from 2006 to 2009, stocking, cashiering, and cleaning tables.  (TR 32.)  At the time of the hearing, Plaintiff volunteered part-time, ten hours a week, with the Jet Program through Work First by supervising children (TR 36-37.)  Plaintiff had been volunteering for twenty hours per week, but she had her hours reduced to ten with the help of her nurse practitioner because she didn't think that she could handle twenty hours.  (TR 38.)

2

Plaintiff testified that she was sexually abused by her stepfather from age five to age sixteen. (TR 31.) Plaintiff further testified that, as a result, she suffered from depression, PTSD, and anxiety and was unable to work. (TR 30-31.) Plaintiff explained that she often suffered from flashbacks, nightmares, breakdowns, "zoning out," and "freezing up" that affected her ability to work and sometimes caused her to skip scheduled days of work. (TR 32, 33, 35.) Plaintiff also explained that she had been having panic attacks about three or four times a week. (TR 35.) Plaintiff told the ALJ that she first sought psychiatric help at Bay-Arenac Behavioral Heath in December of 2010. (TR 45-46.) Plaintiff explained that she didn't seek help immediately after she stopped working in 2009 because was trying to be strong and didn't want to admit that she needed help. (TR 46.) Plaintiff testified that she had since been treating with a nurse practitioner, who prescribed her medication, and a therapist, who visited Plaintiff at her home once a week. (TR 39.) She added that she took Vistaril, Prozac, and lithium to treat her symptoms. (TR 38.)

Plaintiff testified that she could only stand for twenty minutes at a time due to back pain that started a couple of years prior. (TR 40.) She also testified that she could sit for about thirty minutes at a time. (TR 40.) Plaintiff stated that a doctor prescribed her Naprosyn for her back pain; she added that it did not work. (TR 41.) Plaintiff also claimed that she had trouble remembering portions of conversations with others. (TR 42.) Plaintiff testified that on a typical day, she was usually at her father's house with her children so he could assist her if necessary. (TR 43.) She explained that her only sources of income were the Department of Human Services and her children's father. (TR 43-44.) As far as daily chores and household tasks, Plaintiff said that she probably cleaned one room per day, but when she was down, she didn't do anything.

(TR 42.)   Plaintiff elaborated that her children's father would help her with household chores and cleaning when he came over to pick up the children.  (TR 42.)

### B.      Kelli Maciag's Testimony

Plaintiff's treating therapist, Kelli Maciag, also testified at the hearing.   Plaintiff summarizes Ms. Maciag's testimony in her brief as follows:

> Ms. Maciag reported that she had provided therapy and case management to the Plaintiff from December 2010 continuing through the date of the hearing, typically seeing her for two to four hours per week.  Tr. 48-53.  She is qualified as a licensed Master's level social worker.  Her testimony contains extensive detail about the severity of the Plaintiff's impairments and limitations.

> Examples of Ms. M[a]ciag's testimony about the actual severity of the Plaintiff's impairments are that she struggles every day, in phasis [sic], is very depressed, and "oftentimes she's kind of checked, out."  Tr. 49.  The Plaintiff can meet only the "basic needs" of her three children.  Tr. 50.  "Mari at times shuts down, she's almost immobilized by her depression.  She had difficulty trusting people, she will shut everything out."  *Id*.  Ms. Maciag reported that the Plaintiff struggles with even basic daily activities.  Tr. 51[.]  She is overwhelmed by everything.  *Id*.  Her opinions and observations were based on discussions with the other treating mental health professionals, including a psychiatrist and nurse practitioner.  Tr. 52.  They agreed that the condition was permanent but hoped for some improvement with time and more treatment.  *Id*.

(Docket no. 18 at 9.)

### C.      Vocational Expert's Testimony

First, the ALJ asked the vocational expert (VE) whether a hypothetical individual of the same age, education, and vocational background as Plaintiff, who was limited to simple, routine, and repetitive work without strict production quotas or a fast pace and only occasional, superficial interaction with coworkers and supervisors and no interaction with the general public, would be able to perform any work existing in significant numbers in the regional or national economy.  (TR 54.)  The VE responded that such an individual would be able to perform work as a dishwasher, for which there were 4,300 jobs available in the state of Michigan and 141,000

jobs available nationally in the light work category, and 8,500 jobs available in Michigan and 282,000 jobs available nationally in the medium work category; a cleaner, such as a janitor or a housekeeper, for which there were 13,000 jobs available in Michigan and 500,000 jobs available nationally in the light work category, and 44,100 jobs available in Michigan and 1,490,000 jobs available nationally in the medium work category; and a packer, for which there were 9,200 jobs available in Michigan and 320,700 jobs available nationally in the light work category, and 4,800 jobs available in Michigan and 166,000 jobs available nationally in the medium work category. (TR 54-55.)

The ALJ then asked the VE whether those jobs or any others existing in significant numbers in the regional or national economy would still be available if the individual from the first hypothetical would likely be absent from work between one and three days each week. (TR 55.) The VE responded that there would be no jobs available to such an individual. (TR 55.)

**D.    Medical Evidence**

The undersigned has thoroughly reviewed Plaintiff's medical record. In lieu of summarizing Plaintiff's medical history, the undersigned will make references and citations to the record as necessary in response to the parties' arguments.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 24, 2011 and that Plaintiff suffered from the following severe impairments: PTSD and major depressive disorder. (TR 14-15.) The ALJ also found that Plaintiff's alleged chronic lower back pain did not impose more than minimal functional limitations on Plaintiff's ability to perform basic work activities. (TR 15.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 16-18.)  The ALJ then found that Plaintiff

had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform a full range of work at
> all exertional levels but with the following nonexertional limitations: claimant is
> limited to simple, repetitive, routine work without strict production quotas or a
> fast-paced work environment; and, claimant is limited to occasional, superficial
> contact with coworkers and supervisors and none with the public.

(TR 18-20.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff

was capable of performing a significant number of jobs in the national economy.  (TR 21-22.)

Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any

time from February 24, 2011, through the date of the ALJ's decision.  (TR 22.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions.   Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper

legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127

F.3d 525, 528 (6th Cir. 1997).   Substantial evidence is more than a scintilla but less than a

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'"  *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*,

305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.   It is not the function of this Court to try

cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard

v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745

F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.   Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)   Plaintiff was not presently engaged in substantial gainful employment; and

(2)   Plaintiff suffered from a severe impairment; and

(3)   the impairment met or was medically equal to a "listed impairment;" or

(4)   Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding

7

"supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because the ALJ (1) did not properly summarize or evaluate the opinions of Plaintiff's treating therapist, Kelli Maciag; (2) did not properly assess the opinion of examining psychiatrist, Dr. Harold Lenhart, M.D.; and (3) inadequately and incorrectly considered Plaintiff's testimony. (Docket no. 18 at 7-18.)

1.     *The ALJ's Assessment of Ms. Maciag's Opinions*

Plaintiff asserts that the ALJ failed to adequately address the opinions set forth by her treating therapist, Ms. Kelli Maciag, though her hearing testimony and written reports.  (Docket no. 18 at 7-12.)  Ms. Maciag, a Limited License Master Social Worker with Bay-Arenac Behavioral Health, began treating Plaintiff in December of 2010 and was still treating her at the time of the hearing.  (TR 48-53.)

Limited License Master Social Workers are not "acceptable medical sources" under the Regulations.  *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  Opinions from sources that are not considered "acceptable medical sources" are important and should be evaluated when assessing the severity of an individual's impairments and the impact those impairments have on the individual's ability to function.  20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *2, *3 (Aug. 9, 2006).  Social Security Ruling 06–03p states that there are certain factors an ALJ may weigh when reviewing opinions from non-acceptable medical sources, such as the nature and extent of the relationship between the source and the individual, how well the source explains the opinion, the source's specialty or area of expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.  2006 WL 2329939, at *4-5.

The ALJ considered Ms. Maciag's hearing testimony and summarized it as follows:

Claimant's therapist and case manager, Ms. Kelli Maciag, also testified.  Ms. Maciag reported marked depression as well as a range of emotional responses. She stated the claimant often "shuts down" and only meets the basic needs of the children and the household.  Ms. Maciag also reported that the claimant experiences significant trust issues secondary to the childhood trauma.

9

(TR 18.)  The ALJ also considered and discussed Ms. Maciag's treatment notes from her initial intake assessment and her subsequent outpatient mental health treatment of Plaintiff.  (TR 14, 15.)

Plaintiff argues that the ALJ's written summary of Ms. Maciag's opinions was cursory, incomplete, inaccurate, and inadequate.  (Docket no. 18 at 12.)  An independent review of Ms. Maciag's testimony and treatment records, however, does not reveal any inaccuracies in the ALJ's summary of the same.  Moreover, Plaintiff does not cite to any authority that regulates the length, content, or quality of the ALJ's summary of the record evidence.  Indeed, there is no mandate that the ALJ discuss all of the evidence of record.  To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).

Plaintiff also argues that the ALJ erred by failing to consider SSR 06-03p's "mandatory factors" in evaluating Ms. Maciag's opinions.  (Docket no. 18 at 12.)  As Defendant points out, "SSR 06-3p is phrased in permissive rather than mandatory terms;" this is particularly true with regard to weighing the suggested factors.  (Docket no. 20 at 22-23 (quoting *Bernard v. Comm'r of Soc. Sec.*, No. 11-12951, 2012 WL 3639054, at *12 (E.D. Mich. July 25, 2012), *report and recommendation adopted*, 2012 WL 3646937 (E.D. Mich. Aug. 23, 2012)).); *see* SSR 06-03p, 2006 WL 2329939, at *4-5.  More importantly, though, Ms. Maciag's testimony and treatment records primarily consist of her observations of Plaintiff's impairments; they do not contain an opinion with regard to Plaintiff's functional capacity or limitations, or her ability to engage in substantial gainful activity on a regular and constant basis, which the ALJ could have, or should have, evaluated.  It is evident from the ALJ's discussion that he did, in fact, consider Ms.

10

Maciag's testimony and treatment records, which is all the regulations require. Therefore, Plaintiff's Motion should be denied in this regard.

### 2.   The ALJ's Assessment of Dr. Lenhart's Opinion

On August 29, 2012, Dr. Harold Lenhart, M.D. of Bay-Arenac Behavioral Health completed a psychiatric evaluation, a mental impairment questionnaire, and a mental residual functional capacity assessment of Plaintiff with regard to her alleged disability. (TR 463-71.) The parties do not dispute that Dr. Lenhart was not a treating physician, as he only examined Plaintiff once before rendering an opinion on Plaintiff's impairments.

The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). But the ALJ is not bound by a non-treating physician's opinion. *McKivens v. Comm'r of Soc. Sec.*, No. 11-cv-14268, 2012 WL 3263847, at *11 (E.D. Mich. July 9, 2012) (citing *Hale v. Sec'y of Health and Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987), *Reynolds v. Sec'y of Health and Human Servs.*, 707 F.2d 927, 930 (6th Cir. 1983)). When no treating physician opinion has been granted controlling weight, the medical opinion of a non-treating or examining source is weighed based on the examining relationship (or lack thereof), specialization, consistency, and supportability, as well as other factors that tend to support or contradict the opinion. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. 404.1527(c)). Nevertheless, there is no per se rule that requires an articulation of each of the six regulatory factors. *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). Notably, while the ALJ must give good reason for the decision not to adopt the opinion of a treating physician, such a rationale is not required for a non-treating or examining source. *Smith v. Comm'r of Soc. Sec.*,

11

482 F.3d 873, 875-76 (6th Cir. 2007).   Additionally, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight."   *Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008) (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)).

Upon examining Plaintiff, Dr. Lenhart diagnosed her with major depression recurrent severe and PTSD.  (TR 470.)  He opined that Plaintiff was markedly restricted in activities of daily living and in maintaining social functioning; was extremely deficient in maintaining concentration, persistence, or pace; and continuously suffered from episodes of decompensation, each of extended duration.  (TR 466.)  Dr. Lenhart also found that Plaintiff was moderately limited in, among other things, the ability to understand, remember, and carry out one- or two-step instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without supervision; and respond appropriately to changes in the work setting.  (TR 467-68.)  He further opined that Plaintiff was markedly limited in the ability to understand, remember, and carry out detailed instructions; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and interact appropriately with the general public, supervisors, or coworkers.  (TR 467-68.)   Dr. Lenhart concluded that Plaintiff was unable to enter the workforce and was totally disabled because of her affective instability, poor concentration, easy distractibility, poor retention of written material.  (TR 470.)

The ALJ discussed Dr. Lenhart's opinion as follows:

The undersigned has also considered the medical source statement of examining psychiatrist, Harold Lenhart, M.D., who opined the claimant is "unable to enter

12

the workforce" and is markedly limited in many mental tasks (Ex. 10F, pp. 5-6, 8). In giving no weight to the opinion, the undersigned notes the opinion was based after only one examination of the claimant. Further, Dr. Lenhart did not review the treatment notes of longtime psychiatrist, Dr. Kondepanini. The opinion is also based entirely on the claimant's self-report and is inconsistent with the robust activities of daily living performed by the claimant, which Dr. Lenhart acknowledges in his report.

(TR 20.) Because Dr. Lenhart was not a treating medical source and because Dr. Lenhart's opinion that Plaintiff is disabled is an issue reserved to the Commissioner, the ALJ was not required to give full weight to his opinion. After considering the factors set forth in 20 C.F.R. § 404.1527(c) and reiterated in *Gayheart*, the ALJ found that Dr. Lenhart's opinion was entitled to no weight at all. (TR 20.) Specifically, the ALJ noted that Dr. Lenhart's opinion was based on a single examination, the ALJ addressed the consistency of the opinion by finding that it was inconsistent with Plaintiff's daily activities, and he discussed the supportability of the opinion by noting that it was based on Plaintiff's self-reports. (TR 20.) The ALJ also factored Dr. Lenhart's familiarity with other record evidence into his determination when he stated that Dr. Lenhart did not review the treatment notes of Plaintiff's treating psychiatrist. (TR 20; *see also* SSR 06-03p, 2006 WL 2329939, at *3.)

Plaintiff argues that the ALJ violated SSR 06-03p by failing to reference the degree to which Dr. Lenhart's opinion is supported by Ms. Maciag's hearing testimony and treatment records. (Docket no. 18 at 14 (citing SSR 06-03p, 2006 WL 2329939, at *4 ("Although 20 CFR 404.1527 and 416.927 do not address explicitly how to evaluate evidence (including opinions) from "other sources," they do require consideration of such evidence when evaluating an 'acceptable medical source's' opinion.")).) While SSR 06-03p expressly states that the regulations require consideration of evidence from "other sources," it does not state that the ALJ is required to specifically articulate in his decision how consistent or inconsistent the evidence

13

from each and every "other source" is with that of the medical opinions from each and every "acceptable medical source."  As discussed above, the ALJ did consider the evidence from Ms. Maciag in his decision, which is all the regulations require.

Plaintiff also argues that the ALJ's claim that Dr. Lenhart did not review the treatment notes of Dr. Kondapaneni was not based on any citation to the record or supported by any evidence in the record.  (Docket no. 18 at 13-14.)  Plaintiff asserts that there are several indicators that demonstrate that Dr. Lenhart did review Dr. Kondapaneni's records.  (*Id*. at 14.) For example, Plaintiff claims that Dr. Lenhart specifically referenced treatment by Dr. Kondapaneni in his opinion; that Dr. Lenhart worked at the same agency as Ms. Maciag, and she collaborated with Dr. Kondapaneni regarding Plaintiff's treatment; and that when asked to describe the clinical findings that he relied upon, Dr. Lenhart responded, "See psych eval & med reviews."  (*Id*. at 14; docket no. 23 at 6 (citing TR 464).)  Defendant argues that the ALJ was entitled to draw the inference that Dr. Lenhart did not review Dr. Kondapaneni's treatment notes from the lack of any reference to those notes in Dr. Lenhart's opinion.  (Docket no. 20 at 21.) An independent review of Dr. Lenhart's opinion reveals that Dr. Lenhart did specifically note that Plaintiff had been under Dr. Kondapaneni's care in the past (TR 469); however, there is no specific reference to Dr. Kondapaneni's treatment records and no indication that Dr. Lenhart did in fact have access to and/or review those records.  Accordingly, the ALJ did not err by reasoning as such in his evaluation of Dr. Lenhart's opinion.  Based on the discussion above, the undersigned finds that the ALJ did appropriately note, discuss, and explain why he did not fully credit Dr. Lenhart's opinion.  Plaintiff's Motion should be denied with regard to Dr. Lenhart.

14

### 3.    The ALJ's Assessment of Plaintiff's Credibility

Lastly, Plaintiff challenges the ALJ's credibility determination.  (Docket no. 18 at 15-18.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997).   But credibility assessments are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree.  *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve

15

the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered and discussed Plaintiff's medical record and the hearing testimony and found that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC assessment.  (TR 19-20.)  First, the ALJ discussed Plaintiff's mental health treatment:

> First, despite the fact the claimant stopped working in late 2009, [she] did not seek mental health treatment until December 2, 2010.  The delay in seeking treatment tends to indicate symptoms were not as functionally limiting as alleged, particularly given the fact that the claimant was independently raising two children during that time.

(TR 19.)  Next, the ALJ reasoned that Plaintiff's subjective complaints were inconsistent with the medical evidence of record:

> The record does not contain evidence of marked or extreme mental impairment. Claimant often reported depression, mood swings, and panic attacks, but not to the extent testified to at the hearing.  Claimant's treating psychiatrist, Kishore Kondapaneni, M.D., consistently observed depressed mood and affect, but preserved thought processes and cognition (Ex. 9F).  Similarly, claimant alleges memory deficits, but at the hearing, she quickly remembered the date of her upcoming physician's appointment and the name of the doctor.  She also quickly remembered the precise amount of state benefits she receives monthly.  Dr. Kondapaneni consistently assessed Global Assessment of Functioning (GAF) scores consistent with moderate mental impairment.  (*Id.*)  The records reflect that many of the claimant's symptoms were enhanced by the birth of a third child into a rocky relationship.  Overall, the treatment records support the allegations that the claimant is limited to depression and anxiety, but not more limited than the determined residual functional capacity.

(TR 19.)  Finally, the ALJ discussed Plaintiff's credibility in terms of her activities of daily living:

> Claimant lives in a townhome alone with her three children, ages one, three and four.  Claimant testified she manages the funds for the household, including state benefits as well as monies received from the children's[] father.  She pays the

utility bills timely and saves money for other expenses as necessary.  The activity of independently raising three kids, especially at those ages, is wholly inconsistent with the claimant's allegations of marked or extreme mental impairment. Claimant opined she is capable of adequately caring for her children, yet inexplicably alleges an inability to perform all work.  Claimant's other activities of daily living also reflect a greater level of mental functioning than alleged. Claimant performs volunteer work for ten hours per week supervising kids. Despite reporting apathy towards many daily activities, claimant is mentally able to manage her personal care, perform housework, prepare simple meals, drive a car, and manage finances (Ex. 6E, pp. 5-8).  She stated she is able to follow written and spoken instructions "pretty good."  (*Id*. at 10).  Similarly, despite reporting significant deficits in social functioning, claimant is able to shop in stores, take her kids outside, go [to] the movies and socialize with friends.  (*Id*. at 8-9).  For example, on February 24, 2012, claimant reported that she goes out one to two days per week with friends (Ex. 9F, p. 9).  Taken together, the undersigned finds the claimant's daily activities show functioning consistent with the determined residual functional capacity.

(TR 19-20.)

Plaintiff argues that the ALJ's reasoning with regard to Plaintiff's delay in seeking treatment is irrelevant because the delay was prior to the alleged onset date of disability. (Docket no. 18 at 15-16.)  While this evidence may have diminished probative value because the delay occurred prior to Plaintiff's alleged onset date, it is not irrelevant, and the ALJ did not err in considering this evidence along with the other evidence of record.  Furthermore, the ALJ did not base his credibility determination solely on Plaintiff's delay in seeking treatment; he also reasoned that Plaintiff's allegations were inconsistent with her activities of daily living and the medical evidence of record.

Next, Plaintiff alleges that the ALJ erred by considering Plaintiff's ten hours of weekly volunteer work in assessing Plaintiff's credibility because it "is significantly less than the full-time standard generally considered equivalent to substantial gainful activity."  (Docket no. 18 at 16.)  Defendant contends that the ALJ's consideration of Plaintiff's volunteer work was proper, even though she only performed it for ten hours per week.  (Docket no. 20 at 14 (citing *Miller v.*

17

*Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("[T]he ALJ did not err by considering [the claimant's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.") and *Brandt v. Astrue*, No. 5:09-cv-97-Oc-GRJ, 2010 WL 746446, at *10 (M.D. Fla. Mar. 3, 2010) (finding that substantial evidence supported the ALJ's credibility determination where the ALJ noted, among other things, that the claimant "performed ten hours a month of volunteer work at a library (as a prerequisite to receive food stamps)")).) Defendant's argument holds merit. Plaintiff has not cited any authority that requires a claimant's daily activities to independently or collectively equal forty hours per week before an ALJ may consider them in assessing the credibility of a claimant's allegations, and the Court finds none. With regard to this issue, Plaintiff's argument fails.

Plaintiff also alleges that the ALJ erred by reasoning that Plaintiff's allegations were less than credible because she was independently raising her children. (Docket no. 18 at 16-17.) Plaintiff disputes the ALJ's finding that she was independently raising her children, alleging that she lived with her father for a portion of the disability period, and after moving into her own apartment, she continued to spend time at her father's house in case she needed help with her children. (*Id*. at 17.) Plaintiff further argues that the hearing testimony demonstrates that she struggles to meet the basic needs of her children. (*Id*.) Defendant counters that while Plaintiff received help with her children, she and the children lived independently at the time of the hearing. (Docket no. 20 at 15.) Then, citing to several portions to the record, Defendant argues that Plaintiff was the primary caregiver to her children with her parents only assisting "from time to time" and that the struggles Plaintiff had with her parental duties did not prevent her from providing her children with a nurturing, safe, and stable household. (*Id*. (citing TR 35-36, 356, 204, 470).) It is not the Court's function to reweigh or resolve conflicts in the evidence. It is

18

evident from the ALJ's written decision that the ALJ considered the evidence related to this issue and found that Plaintiff's independence in raising her children factored into the credibility of her allegations.  This issue falls within the ALJ's zone of choice, and Plaintiff's Motion in this regard should be denied.

Lastly, Plaintiff raises an issue with two of the ALJ's reasoning statements:  "[c]laimant opined she is capable of adequately caring for her children, yet inexplicably alleges an inability to perform all work" and "[t]he activity of independently raising three kids, especially at those ages, is wholly inconsistent with the claimant's allegations of marked or extreme mental impairment."  (Docket no. 18 at 17.)  Plaintiff asserts that "[i]f the mere ability to maintain custody of her children means any claim of a disability is 'inexplicable,' then no parent would ever be deemed disabled."  (*Id*. at 17-18.)  Plaintiff adds that such a standard would require her to give up her children in order to claim disability.  (*Id*. at 17.)  There is no indication that the ALJ intended these statements to stand for anything more than reasoning that Plaintiff's allegations are less than credible.  Furthermore, even if the Court were to find that these statements are inappropriate, the ALJ has provided several other specific and appropriate reasons for discounting Plaintiff's credibility in his decision, many of which apply the factors set forth in 20 C.F.R. § 416.929(c)(3).  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight.  The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence; Plaintiff's Motion should be denied in this regard.

## VI.      CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 18) and GRANT Defendant's Motion for Summary Judgment (docket no. 20).

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 20, 2015            s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

20

**<u>PROOF OF SERVICE</u>**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 20, 2015          s/ Lisa C. Bartlett_____
                                                    Case Manager